# Commonwealth ex rel. v. Taylor et al., Appellants.

*Quo warranto—Absence of pleadings—Ouster—Practice, C. P.*

On an appeal from a judgment of ouster, where the record shows a petition for quo warranto, and judgment of ouster without any intervening answer, plea, demurrer, or proceedings of any kind, there is such a patent defect of jurisdiction on the face of the record that the judgment will be reversed.

*School laws—School directors—Elections—Act of May 14, 1874.*

Under the act of May 14, 1874, § 4, P. L. 160, which directs "the election of an equal number of councilmen and school directors in each of the wards," a separate election must be held by each ward.

*Statutes—Repeal—Acts of May 14, 1874, § 4; May 10, 1878; Feb. 16, 1883; May 13, 1889.*

Although the 4th section of the act of May 14, 1874, P. L. 160, is repealed by implication by the act of May 10, 1878, P. L. 51, it is re-enacted by the subsequent acts of February 16, 1883, P. L. 5, and May 13, 1889, P. L. 193.

*Constitutional law—Amendment—Title—Punctuation—Act May 10, 1878.*

Misplaced quotation marks in the title of an act will not vitiate the title when the sense is clear. The court will make the proper change.

The title of the act of Feb. 16, 1883, P. L. 5, as printed in the Pamphlet Laws is as follows: " A further supplement to the act approved the 14th day of May, A. D. 1874, entitled ' An act to prescribe the manner in which the courts may divide boroughs into wards, and to provide for a ward representation upon school boards, in said boroughs.' " The court will properly punctuate the title so that it may read as follows: " A further supplement to the act approved the 14th day of May A. D. 1874, entitled ' An act to prescribe the manner in which the courts may divide boroughs in-

to wards,' and to provide for a ward representation upon school boards in said boroughs."

The act of May 10, 1878, P. L. 51, does not violate art. 3, § 3, of the constitution, relating to titles of acts, nor article 3, § 6, of the constitution. relating to the amendment of acts.

Argued Nov. 14, 1893.   Appeal, No. 68, Jan. T., 1894, by defendants, H. A. Taylor et al., from decree of C. P. Clearfield Co., May T., 1892, No. 179, entering judgment of ouster on quo warranto, at the relation of W. J. Smathers et al.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Quo warranto.   Before KREBS, P. J.

From the record it appeared that, on March 7, 1892, W. J. Smathers with some fifty other citizens, presented a petition alleging that defendants were acting as school directors of Du Bois borough; that the board consisted of nine members instead of six; that they were elected by a ward vote instead of a concurrent vote of all the wards, as required by act of May 10, 1878, P. L. 51, and praying due process of law to compel defendants to answer by what authority they were acting as such school board.   No answer, plea, demurrer or proceedings of any kind were had until August 2, 1893, when the court entered a formal judgment of ouster.

On June 22, 1893, T. G. Gormley et al., alleging that they were elected school directors Feb. 21, 1893, filed a bill in equity (No. 3, Sept. T., 1893) against G. B. Campbell et al., defendants, who claimed to act as school directors, for surrender of books, papers, etc., and to prevent their collection of taxes, etc. The court granted a preliminary injunction, and, after answer filed and hearing, continued it Aug. 3, 1893, until further order.

The opinion of the court below in the equity proceedings, so far as adopted by the Supreme Court, on the question of the constitutionality of the act of 1878, was as follows:

" But it is vigorously contended that the act of 1878 is unconstitutional for two reasons, viz.: that the title to the act is insufficient and in violation of the 3d section, article 3, constitution of 1874, and also because the act is in effect an amendatory one and in violation of the 6th section, article 3, constitu-

tion 1874.   The first reason is not well founded and it has been clearly ruled by the Supreme Court in a number of cases, of which State Line & Juniata Railroad Company's Appeal, 77 Pa. 429 ; Pottstown Boro., 117 Pa. 538, and Millvale Boro. v. Evergreen Railway Company, 131 Pa. 1, are examples.   In each and all these cases the rule of construction. adopted is, that, where the subject of the original act is sufficiently expressed in its title, and where the provisions of the supplement are germane to the subject of the original, the true rule is that the subject of the supplement is covered by the title which contains a specific reference to the original by its title, and declares it to be a supplement thereto.   This 3d section, article 3, constitution 1874, is an exact rescript of the 3d section, article 3, constitution 1838, and all the authorities are to the same point, both before and since the constitution of 1874.

" This brings us to the second point of the contention, which necessarily implies that a supplement to an act of assembly is no more than an amendment of the act.   What is the legal acceptation of the two words, amendment and supplement ? Do they mean one and the same thing, either in their ordinary and common acceptation or in the law ?   Ordinarily, when we speak of amendment, we refer to the correction or change in some particular of something fully existing or intended to have force, but rendered uncertain because of want of clearness of expression, or error in statement, or omission of something intended to be embraced therein.   When we speak of a supplemental act, we intend something added to, something new, and in legislation we mean, by a supplement to an act already in force, to add to it something not contained in the original, but which new and added legislation is nevertheless germane to the subject of that already in force.

" An examination of the three hundred and seventeen statutes passed at the session of the legislature of 1891, shows that there were thirty-five reciting that they were amendments in the title; five that recited they were supplements to amend, and in the body of the act are found to be strictly amendatory acts within the definition given, and eight which are recited to be supplements to acts in force.   In each act which recites that it is an amendment, the change in legislation, accomplished by its passage, is to change the phraseology of the act or alter

it in some minor particular by omitting something contained in the act amended.    The acts reciting that they were 'supplements to amend' are exactly of the same force, and no doubt this recital grew out of an excess of caution on the part of the draughtsmen of the act.    But in the eight acts styled supplements, contained among the statutes of 1891, is enacted some of the most important legislation now on our statute books, and in each instance the supplement enlarged or added new legislation, germane, however, to the subject upon which the former act to which it purported to be a supplement had already legislated.

" The purpose of the 6th section of art. 3, constitution 1874, was to remedy the evil of enacting important new and vicious matter under the cloak of an amendment of some existing or repealed statute.    Judge COOLEY in commenting upon a precisely similar provision in the constitution of the state of Michigan says this : ' The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the comparison, failed to become apprised of the changes made in the law.    An amendatory act which purported only to insert certain words, or substitute one phrase for another in an act or section, which was only referred to, but not published, was well calculated to mislead the careless as to its effect,—was perhaps sometimes drawn in that form for the express purpose.'    See People v. Mahaney, 13 Mich. 481.

" But the objection does not apply to an act purporting in its title to be enacted for the purpose of adding to former legislation on the same subject-matter.    If an act which purports to be a 'supplement' is to be treated as an amendment, it is a remarkable fact that it has not been discovered before this time, especially in view of the twelve sessions of the legislature, and the large amount of important legislation placed upon the statute books since the adoption of the constitution of 1874 by supplemental acts.    We cannot adopt this view now, and decline to declare the act of 1878 unconstitutional.    The acts of 1874 and 1878, supra, have recently been before SIMONTON, P. J., of the common pleas of Dauphin county, upon other points, and the constitutionality of the act of 1878 does not seem to

have been questioned, and yet the point before the learned judge was vitally involved in the act of 1878: Com. ex rel. Fox v. Pattison, Governor, 2 Dist. Repts. 128."

*Error assigned* was decree.

*Thomas H. Murray* and *A. L. Cole, Cyrus Gordon* with them, for appellants, cited: Jones v. Com., 12 Pa. 365; McLaughlin v. Cluley, 56 Pa. 270 ; Acts of May 14, 1874, P. L. 1601; Feb. 17, 1876, P. L. 5; May 10, 1878, P. L. 51; Feb. 16, 1883, P. L. 5; Art. 3, § 3, Const.

*W. C. Arnold,* for appellees, filed no paper-book.

OPINION BY MR. JUSTICE MITCHELL, January 15, 1894:

We would be compelled to reverse this judgment for irregularity. It has nothing to stand on. The record shows a petition for quo warranto, and judgment of ouster, without any intervening answer, plea, demurrer or proceedings of any kind. No doubt this was an oversight resulting from the fact that the three proceedings, by contested election, by quo warranto, and by bill for injunction, all having the same object, ran along concurrently and were treated practically as one, but the error is one that leaves a patent defect of jurisdiction on the face of the record, and cannot be overlooked.

But beyond this the judgment is wrong in substance, and based on an erroneous view of the law.

The confusion in reading the statutes upon the subject of the election of school directors in the wards of boroughs, arises mainly from the fact that the 4th section of the act of May 14, 1874, is re-enacted and extended by the act of Feb. 16, 1883, without reference to its previous repeal by the act of May 10, 1878. The difficulty however is not insuperable, as the legislative intent is clear.

The act of May 14, 1874, P. L. 160, by its 4th section directed " the election of an equal number of councilmen and school directors in each of the wards," etc. This contemplated a separate election by each ward. Not only is that the natural meaning of the language used, but it is what is generally to be presumed, in accordance with the universal American system that the representative shall be elected by the constituency

which he is to represent, and therefore if he is, under the law, to
be a ward representative in the school board of the borough,
he is presumably to be elected by the voters of the ward. Such
moreover was the prior law under the general public school act
of May 8, 1854, P. L. 617, which in section 2 declares that, in
school districts composed of cities or boroughs divided into
wards for school purposes, each ward shall elect a separate board
of directors.

Whether this intent of the 4th section of the act of 1874
was inoperative by reason of the failure of that act to make
any provision for constituting the wards separate election dis-
tricts, as the learned judge below seems to have thought, we
are not required to consider, as the necessary authority was sup-
plied by the act of May 10, 1878, P. L. 51. This act, however,
while providing for separate ward elections of councilmen and
other officers, expressly excepted school directors, and required
them, along with the burgess, auditors, etc., to be elected by a
" concurrent " or joint vote. The act, though entitled a sup-
plement to the act of 1874, contained no express repeal of any
part of it, but only the general provision that so much as was
inconsistent with its own provisions should be repealed—a con-
sequence which would have followed without expression. It
did repeal the 4th section of the act of 1874 by virtue of the
repugnancy between the system which it prescribed, and that
prescribed by the prior act. The objections to the constitu-
tionality of the act of 1878 are well answered by the learned
judge below, and we are content to rest that question on his
opinion, but we do not think the result follows that this part
of the act of 1878 is still the law. That depends on the effect
of the subsequent legislation.

The act of February 16, 1883, P. L. 5, is a further supple-
ment to the act of 1874. We do not find the inaccuracy in the
title noted by the learned judge below to be substantial. It
consists merely in the misplacing of the quotation marks, which
like other parts of punctuation do not vitiate when the sense is
clear. Properly punctuated the title is, " A further supplement
to the act, approved the 14th day of May, A. D. 1874, entitled
' An act to prescribe the manner in which the courts may di-
vide boroughs into wards,' and to provide for a ward representa-
tion upon school boards in said boroughs." Thus properly read

the difficulty in regard to the title disappears. The act is a supplement to the act of 1874, and is so entitled. Constitutionally therefore it may contain anything that is germane to the subject of that act: Millvale v. R. W. Co., 131 Pa. 1; Phila. v. R. W. Co., 142 Pa. 484. The further explanatory phrase, "and to provide for a ward representation," etc., directs attention to the particular part of the subject of the former act which the supplement is intended to deal with. The act then in express words amends section 4 of the act of 1874, reciting it as originally enacted without any reference to its repeal by the act of 1878. This however does not in anywise affect the validity or the force of the new enactment. The recital of section 4 is followed by a clear re-enactment of its terms, and then, as if to avoid any possible ambiguity, it is provided that " each ward shall elect not less than one nor more than three school directors." The act does not contain any express repeal of prior acts, nor, as already said, any notice of the effect of the act of 1878 upon the section which it re-enacts. But the result is the same as if it did so. It is a clear and unqualified expression of the legislative purpose to establish a system of ward representation, and necessarily supersedes all previous systems. It repeals so much of the act of 1878 as provides for the election of school directors by a joint vote in the wards, in the same way and for the same reason that the act of 1878 repealed section 4 of the act of 1874, because the two systems are irreconcilable and therefore the latest must prevail. There is no difficulty or doubt about this result, or the validity of the statute by which it is produced. The act of 1883 is the existing law on the subject, and so far as any prior acts conflict with it they must give way.

The act of May 13, 1889, P. L. 193, is a further supplement to the act of 1874, and again quotes the 4th section of that act as originally passed, without notice either of its repeal by the act of 1878, or of its re-enactment and extension by the act of 1883. No difficulty, however, arises from this fact, as there is no repugnancy between the two acts. That of 1889 enlarges the power of the courts so that they may increase the number of councilmen and school directors after the original decree dividing the borough into wards and fixing the number of ward officials. The terms and effect of the act of 1883 are not in anywise affected by this change.

Judgment reversed.

GORMLEY ET AL. V. CAMPBELL et al., APPELLANTS.

Appeal, No. 69, Jan. T., 1894, by defendants, G. B. Campbell et al., from decree of C. P.. Clearfield Co., Sept. T., 1893, No. 3, granting preliminary injunction in favor of T. G. Gormley et al., plaintiffs.   Argued with preceding case.

The facts are stated above at page 452.

OPINION BY MR. JUSTICE MITCHELL, January 15, 1894:

As this bill was founded upon and merely ancillary to the proceedings on quo warranto in Com. ex rel. Smathers v. Taylor, opinion filed herewith, it must fall with the reversal of that judgment.

Injunction dissolved and bill dismissed with costs.