## Montgomery's Estate.

*Taxation—Collateral inheritance tax—Estates for life—Estates in remainder—Act of May 6, 1887, P. L. 79.*

An appraisement for collateral inheritance tax of the whole estate of a testator cannot be sustained, where it appears that the will created life estates and estates in remainder, and the will itself shows that the persons who would ultimately take the remainders cannot be ascertained until after the death of the life tenants. Such an appraisement cannot be sustained because persons who might be remaindermen did not enter security or offer to enter security for the payment of the tax.

Section 3 of the Act of May 6, 1887, P. L. 79, applies to a case where both the life tenant and the remaindermen are collaterals.

Where a will creates both life estates and estates in remainder, it is the duty of the appraiser to make an appraisement of the life interest. If he fails to do so and appraises the whole estate for the tax, the appraisement will be set aside.

In Section 6 of the Act of May 6, 1887, P. L. 79, the words "upon a condition or contingency" are to be construed so as to relate to the estate "for life or for a term of years, or for any other limited period," previously mentioned. They are not to be construed as referring to a separate estate given upon a contingency or condition.

Where a testator gives a life estate in his personal property to his brother, followed by a life estate to his niece with remainder to her children, if any survive her, and if none, then a remainder to the male relatives of his father bearing the family name living at the death of the brother and niece, or the survivor of them, an appraisement of the whole estate for collateral tax purposes is improper. The life estate should be appraised and taxed, but the appraisement of the remainder must be postponed until it is ascertained who the remaindermen are to be.

318, (1916).] Statement of Facts—Opinion of the Court.

Argued Nov. 8, 1915. Appeal, No. 17, Oct. T., 1915, by Peoples Trust Company of Lancaster, Trustee of Millard F. Montgomery and Edith Curry, from decree of O. C. Lancaster Co., Sept. T., 1914, No. 68, dismissing exceptions to adjudication in Estate of John C. Montgomery, deceased. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Exceptions to adjudication. Before SMITH, P. J.
The opinion of the Superior Court states the case.

*Error assigned* was in dismissing exceptions to adjudication.

, *Frank S. Groff*, for appellant.—The appraisement was improper: Burkhart's Est., 25 Pa. Superior Ct. 515; Coxe's Est., 181 Pa. 360; Coxe's Est., 193 Pa. 100; Jewell's Est., 235 Pa. 123; Cooper's Est., 127 Pa. 435.

The tax on the life estates must be paid by the life tenants: Brown's Est., 208 Pa. 161; Penn-Gaskell's Est. (No. 1), 208 Pa. 342; Henris's Est., 53 Pa. Superior Ct. 633; Burkhart's Est., 25 Pa. Superior Ct. 514.

*M. E. Musser*, for appellees.

OPINION BY TREXLER, J., July 18, 1916:
John C. Montgomery in the third paragraph of his will placed his personal estate in the hands of a trustee, and directed that the net income of the estate be paid to his brother, M. F. Montgomery, during his natural life, and at his death, to a niece, Edith Curry, during her natural life, and at the death of the said M. F. Montgomery or Edith Curry, or the survivor of them, he bequeathed the principal unto the children of the said Edith Curry, if any were left to survive her, and if no children were left to survive her, then he directed said trustee to convert the property into cash, and the bal-

ance remaining was to be given to all his male relatives named Montgomery, descendants of his father, A. J. Montgomery, deceased, living at the death of the said M. F. Montgomery and Edith Curry or the survivor of them, share and share alike.

It will be perceived that there was a life estate in M. F. Montgomery, followed by a life estate in Edith Curry, a remainder to her children, if any survived her, and if none, then a remainder to the male relatives of his father who bore the name of Montgomery living at the death of the said M. F. Montgomery and Edith Curry or the survivor of them.

The register of wills of Lancaster County appointed an appraiser to value and appraise the real estate of the decedent.  He appraised both the real estate and personal property, the latter being fixed at the sum of $21,051.05.  The court allowed the collateral inheritance tax on the entire amount.

The question is whether the entire personal estate is subject to the tax, M. F. Montgomery and Edith Curry being still in life, or whether the collateral inheritance tax on the estate passing to the remaindermen must be paid after the expiration of the life estates.  Under Section 3, Act of May 6, 1887, P. L. 79, it is provided that bequests to collaterals to take effect in possession after the expiration of one or more life estates, shall not be taxable or bear interest until the persons liable for the same shall come into actual possession after the termination of the estates for life, and the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner.  Under the proviso of said section, the owner has the right to anticipate the time for the payment of the tax and in such case the tax is assessed on the value of the estate at the time of payment after deducting the value of the life estate.  There is a further proviso, that the owner of any personal estate shall make a full return of the same to the registrar of wills of the proper county within one year after

the death of the decedent, and within that time enter into security for the payment of the tax to the satisfaction of such register, and in case of failure so to do, the tax shall be immediately payable and collectible.

Under the terms of the will before us, we cannot tell who will ultimately take the estate, and therefore under the rule laid down in Coxe's Est., 193 Pa. 100, the second proviso of the above section is incapable of application. In this, as in that case, it is not possible now to say who the remaindermen will be who will take the estate. We cannot now tell whether the children of Edith Curry will be the beneficiaries under the will or whether the estate will go to the male relatives of decedent's father bearing the name of Montgomery. The court allowed the tax against the entire personal estate, assigning as reasons for his action the following: First, we quote the language of the court. "We might stop here and dismiss the exceptions for the 'owners' of the 'personal estate' have not entered 'into security for the payment of the tax' and it has not been offered as a reason for not having done so that they cannot be ascertained and identified immediately, as in Coxe's Est., 193 Pa. 100." We cannot see how the beneficiaries under the will who are to be the ultimate objects of its provisions can be charged with not having offered as a reason for not having furnished a bond that they cannot be ascertained and identified immediately. This would be an absurdity. The very provisions of the will show us that the persons who are to take the estate cannot now be determined. As in Coxe's Est., supra, "the solution of the question requires only an examination of the will of the testator to learn, if we can, who are the persons who are to take the collateral estate in remainder after the determination of the life estate" and "how is it possible now to say who those persons are or who they will be." If they cannot now be ascertained, how can they be charged with a failure to maintain their rights?

Second, The court holds that Section 3 has no appli-

cation when both the life tenant and the remaindermen are collaterals. We see no reason for thus holding. Under Section 12 of the act, it is the duty of the registrar of wills to appoint an appraiser to appraise the estate, "and it shall further be the duty of such appraiser to assess and fix the cash value of all annuities and life estates growing out of said estate, upon which annuities and life estates the collateral inheritance tax shall be immediately payable out of the estate at the rate of such valuation."

The law recognized the estates for life and in remainder as liable each for its own tax, and neither as liable for the other. The Act of March 11, 1850, P. L. 170, Section 1, provided that in all cases where there was a bequest to collateral relatives liable to the tax to take effect in possession, after the expiration of life estates they could abide the actual possession of the estates provided they entered security. The Act of 1887, Section 3 above referred to, reenacts that part of the Act of 1850 and uses the same words, "in all cases, etc." Wherever there is a postponement of the actual enjoyment of the estate by reason of the erection of a preceding life estate there shall be no tax collectible until possession accrues, and this the legislature has declared is to be so in all cases. We do not feel warranted in the face of the fact that the Act of 1887 recognizes that life estates and estates in remainder may each be separately assessed, to read into the act the words, that the life estates preceding the estates in remainder must be such as are not taxable because not held by collaterals. One thing stands out clearly, and that is that the remainderman shall not be compelled to pay the tax until he takes the estate. The nature of the preceding estates is not the criterion, but the postponement of the enjoyment or possession is what determines the exemption from present liability. In Brown's Est., 208 Pa. 161; Penn-Gaskell's Est. (No. 1), 208 Pa. 342; and in Burkhart's Est., 25 Pa. Superior Ct. 514, both the life estates and remainders were liable

for the tax and separately assessed.   In Penn-Gaskell's Est., supra, Judge FELL remarked, "Each estate, that for life, and that in remainder was liable for its proportionate part of the tax."

Third, The court however stated that proceedings under the third section of the act are not before it; that there was no demand made to the appraiser for the fixing of the value of the life interest, and no appeal taken as provided by Section 12 of the act.   The difficulty however that presents itself is that the appraisement made in this case is not in conformity with the act.   It does not purport to be an appraisement of the several interests of the parties, and it was the duty of the appraiser to make an appraisement of the life interests, and failing to comply with the requirements of the act, the appraisement was as in Burkhart's Est., 25 Pa. Superior Ct. 514, "no appraisement at all."   There is no proof that notice was given to any one of the parties in interest, and apart from this as stated before, there is nothing from which the remaindermen could appeal.   As far as the remaindermen are concerned, when the estate finally passes to them, the value of it can be fixed as required by the act. The remaindermen being unascertained and therefore not being required to file a bond, it is hard to say how an appraisement under the Act of 1887 could bind them, and certainly not an appraisement such as appears in the case before us.

Fourth, In further support of his conclusion, the learned judge of the Orphans' Court decided that under the sixth Section of the Act of 1887 the court has original jurisdiction over the matters therein mentioned, and that the case before us falls within the provisions of the section.   The section reads as follows: "If the legacy subject to collateral inheritance tax be given to any person for life, or for a term of years or for any other limited period, upon a condition or contingency, if the same be money, the tax thereon shall be retained upon the whole amount; but if not money, application

shall be made to the Orphans' Court having jurisdiction
of the accounts of the executors or administrators to
make apportionment, if the case requires it, of the sum
to be paid by such legatees and for such further order
relative thereto as equity shall require." The court held
that the words upon a condition or contingency formed
a separate subject, and did not relate to the estate "for
life or for a term of years or for any other limited pe-
riod." In other words that a legacy given upon a con-
dition or a legacy given upon a contingency is a separate
subject in this section as much as one given for life,
and the words do not qualify the words for life, for a
term of years or for any other limited period. We do
not so read the section. If the last clause were preceded
with the preposition 'or,' it would express the thought
contended for, but this section indicates that the estate
for life or for a term of years or for any other limited
period has the qualification that it is accompanied by a
condition or a contingency, and that it is to such estates
only that the section applies. It is provided in Section
12 that annuities and life estates shall be assessed at
their cash value and the inheritance tax shall be im-
mediately payable. Section 3 provides, as we have al-
ready noticed, for estates in remainder. Evidently, Sec-
tion 6 is to provide for a special class of estates, namely,
those upon condition or contingency. Under this sec-
tion cases might arise in which the ascertainment of the
value of the estates presently subjected to tax might be
very difficult, and it is therefore provided in this section
that the court may use its equitable powers to arrive at
some settlement. In ordinary cases free from conditions
or contingencies appraisement could readily be made.
The learned court in adopting the construction it put
upon this section relied in some degree upon the punctu-
ation. This is of no aid in the interpretation of statutes:
Com. v. Gilkeson, 18 Pa. Superior Ct. 516 (522); Gy-
ger's Est., 65 Pa. 311.

Fifth, It is argued that the remaindermen lose noth-

ing by a present payment of the tax. We need but state that we are trying the right of the State to exact the tax without the appraisement directed by law and its right to collect it from the remaindermen before the expiration of the life estates. If the Commonwealth has no present right to demand the tax, it cannot justify such demand by saying that the remaindermen are no worse off if they pay the tax now, than if they wait until the tax is legally demandable. The case before us must be decided under the Act of Assembly. A mathematical calculation showing that it is just as profitable for them to have the tax paid out of the estate now as later can be of no aid to us in construing the act. As to the life tenants, the amount of collateral inheritance tax has not been properly ascertained in this proceeding, and we see nothing before us that would allow the decree of the lower court, in this respect, to stand. If the tax is to be collected from the life tenants it must be assessed as provided by Section 12 of the Act of 1887. In our opinion the tax cannot now be assessed against the whole estate.

The decree of the lower court dismissing the exceptions and confirming the adjudications in so far as it awards the register of wills collateral inheritance tax to the amount of $915.72, is set aside, and distribution is to be made in accordance with this opinion. Appellee for costs.